IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| TIMOTHY M. THOMAS,<br>　　　Plaintiff | :<br>:<br>: |
| 　　　v. | : CIVIL NO. 1:11-CV-2336<br>: |
| DIANA MARIE THOMAS, DAVID M.<br>DOUGHERTY, DANIEL DIEHL, and<br>KATHY JO WINTERBOTTOM,<br>　　　Defendants | :<br>:<br>:<br>: |

*M E M O R A N D U M*

I. *Introduction*

　　　Plaintiff is Timothy M. Thomas, a trooper with the Pennsylvania State Police (PSP). He filed this civil-rights action arising from civil proceedings his wife initiated against him for protection from abuse (PFA) and a state-police internal-affairs investigation initiated against him based on the PFA charges. We are considering three motions to dismiss filed on behalf of (1) defendant, Diana Thomas, Plaintiff's wife; (2) defendant, David M. Dougherty, Diana Thomas's lawyer in the PFA proceedings; and (3) defendants, Daniel Diehl and Kathy Jo Winterbottom, Pennsylvania State troopers.

II. *Standard of Review*

　　　In considering a motion to dismiss under Fed. R. Civ. Proc. 12(b)(6), "[w]e 'accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint,

the plaintiff may be entitled to relief.'" *Byers v. Intuit, Inc.,* 600 F.3d 286, 291 (3d Cir. 2010) (quoted case omitted).

A complaint need only contain "a short and plain statement of the claim," Fed. R. Civ. P. 8(a)(2), and detailed factual allegations are not required, *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955, 1964, 167 L.Ed.2d 929 (2007). Nonetheless, a complaint has to plead "enough facts to state a claim to relief that is plausible on its face." *Id.* at 570, 127 S.Ct. 1955 at 1974. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009) (quoting *Twombly*, 550 U.S. at 556, 127 S.Ct. at 1965). "[L]abels and conclusions" are not enough, *Twombly,* 550 U.S. at 555, 127 S.Ct. at 1964-65, and a court "'is not bound to accept as true a legal conclusion couched as a factual allegation.'" *Id.*, 127 S.Ct. at 1965 (quoted case omitted).

With this standard in mind, we set forth the background to this litigation, as Plaintiff alleges it.

III.  *Background*

Plaintiff alleges as follows. On December 21, 2009, Diana Thomas demanded that Plaintiff leave the marital home. (Compl. ¶ 7). Plaintiff complied and his wife then contacted defendant Diehl who was on duty at the state police barracks at the time. (*Id.* ¶ 9). Diehl and Diana Thomas knew each other. (*Id.*). "With absolutely no reason to do so, but intending to harm and injure Timothy Thomas for whom he

possessed considerable subjective animus, Cpl. Daniel Diehl agreed with Diana that he would tell Diana Thomas to flee the residence and go to another location (namely her parents' home)." (*Id.* ¶ 11).

After Plaintiff left the residence, Diehl, "vindictive[ly] and "intending to harm the plaintiff in his personal familial relationships, called the Upper Uwchlan Township Police Department and told them that plaintiff was separated from his wife, that his wife had kicked him out," and that Plaintiff "was a 'loose cannon,' and a 'prime candidate for murder/suicide.'" (*Id.* ¶ 12). "As [a] consequence, the Upper Uwchlan Police Department stationed officers around the residence of Diana Thomas's parents serving Diehl's intentional effort to create an incident and further humiliate and embarrass Timothy." (*Id.* ¶ 14).

"Diehl engaged in a policy designed to divide the Thomas[e]s and destroy the relationship that held the family together." (*Id.* ¶ 17). Apparently in pursuit of this policy, he "intentionally created an inaccurate and pernicious group of communications and accusations that were intended to create a matrix of domestic relations impediments to communication and any possible resolution of the differences between the Thomas[es]." (*Id.* ¶ 18).

Diana Thomas and her lawyer, defendant Dougherty, used these communications and accusations ("Diehl's unlawfully engendered words and actions"), "even after they were totally debunked by" the State Police, to file false PFA petitions in

-3-

the Court of Common Pleas of Chester County, Pennsylvania, "forcing [Plaintiff] to hearings and depriving him of his children." (*Id.* ¶¶ 19, 29 and 31).

The PFA proceedings apparently triggered an investigation by the state police's internal affairs division (IAD). (*Id.* ¶ 24). State police officers attended his domestic-relations hearings, gathering information on him. (*Id.*). In February 2009, Plaintiff was approached by an IAD officer. (*Id.* ¶ 21). Plaintiff pleaded with the officer to help him, that he could not see his child because of what, as Plaintiff said, "you guys are doing. It's being used against me in court." (*Id.* ¶ 23). The officer "took this information back to his IAD superiors." (*Id.*).

Through a subordinate officer, defendant Winterbottom told Plaintiff "that if [he] 'keeps asking questions,' it can be construed as 'interference with an investigation,' and this included instructions that he was not allowed to ask questions in putting information together for purposes of seeing his kids and for use in defending himself in his domestic court conflicts." (*Id.* ¶ 25).

"Winterbottom followed an intentional strategy of delaying and extending IAD investigations into the plaintiff." (*Id.* ¶ 29). Diana Thomas knew this and "in turn based her domestic relations attacks on the plaintiff in Chester County upon the false and misleading PSP reports and information generated by Diehl and others in the Pennsylvania State police." (*Id.*). In turn, Winterbottom waited, anticipating decisions in the state court damaging to Plaintiff which could be used in "administrative actions against Thomas seeking to damage and destroy his career." (*Id.*).

-4-

"Only the legal thoroughness and integrity of the Chester County Court of Common Pleas protected the plaintiff from the abuses of the Pennsylvania State police and Diana Thomas.  The Chester County courts after appropriate evaluation dismissed the false and misleading PFA's and other false charges against Trooper Thomas."  (*Id.* ¶ 31).  The court "totally and completely vindicated [him] regarding the dishonest and misleading PFA's . . . ."  (*Id.* ¶ 32).  Nonetheless, "defendants Thomas and Dougherty . . . continu[e] to use the false and scurrilous accusations that Diehl put in his reports to the local police even though both of these defendants know that Diehl's representations were totally and completely false."  (*Id.* ¶ 31).  And "[h]e [has] still not been able to see his children on a fair basis."  (*Id.* ¶ 32).  "He has not seen his son Ethan since September 29, 2010 because of adverse court orders based upon misinformation provided by the defendants Diana Thomas and David Dougherty."  (*Id.*).

"Diana Thomas had her children electronically eavesdrop and record conversations with their father Trooper Thomas in violation of both state and federal wiretapping laws.  Diana Thomas has intentionally destroyed, with the help of the Pennsylvania State police, the familial relationship between Trooper Thomas and his children."  (*Id.* ¶ 30).

In Count I, Plaintiff sues defendant Diehl for a violation of his substantive due process rights.  Plaintiff alleges that "Diehl intentionally created documents, initiated communications, and encouraged hostile actions in third persons such as other police officers for the sole purpose of destroying the plaintiff's private familial relationships,

including his marriage, and depriving him of the company and society of his children." (*Id.* ¶ 37). "Diehl knew and intended that his dishonest and damaging actions and words would cause a profusion of consequences damaging to Thomas and his federally guaranteed familial rights." (*Id.* ¶ 39).

In Count II, Plaintiff sues defendant Winterbottom for a violation of his right of access to the courts, his First Amendment right to petition the government for redress of grievances, and his procedural and substantive due process rights because her actions "prevented Thomas from properly working on his legal rights to see his children." (*Id.* ¶ 41).

In Count III, Plaintiff sues Diana Thompson and Dougherty for abuse of process under the Fourteenth Amendment, for a violation of Plaintiff's right of access to the courts, for a violation of his First Amendment right to petition the government for redress of grievances, and for unlawful use of civil proceedings. These claims are based on their alleged knowing use of Diehl's allegedly false statements "in various court proceedings" against Plaintiff, including his statement to the Upper Uwchlan Township Police Department that Plaintiff was a loose cannon and a prime candidate for murder/suicide. (*Id.* ¶ 43). These defendants continue to use these statements in court proceedings, "even though Tim's domestic relations lawyer has insisted they not do this." (*Id.*). Diana Thompson is also sued for violations of state and federal wiretapping laws.

IV.  *Discussion*

　　A.  *Diehl and Winterbottom's Motion to Dismiss*

　　　　1.  *The Substantive Due Process Claim against Diehl Fails Because He Did Not Act Under Color of State Law*

Diehl moves to dismiss the claim against him on the ground that his alleged conduct, telling the Upper Uwchlan Township Police that Plaintiff was separated from his wife, that his wife had kicked him out, and that Plaintiff was a loose cannon and a prime candidate for murder/suicide, was not action under color of state law.  We agree with Diehl's assertion.

Plaintiff's federal civil-rights claims are authorized by 28 U.S.C. § 1983.  To state a section 1983 claim, a plaintiff must plead two essential elements: (1) the conduct complained of was committed by a person acting under color of state law; and (2) the conduct deprived the plaintiff of a federal constitutional or statutory right.  *See Miller V. Mitchell,* 598 F.3d 139, 147 (3d Cir. 2010).  A person acts under color of state law when he "exercise[s] power 'possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law.'"  *West v. Atkins*, 487 U.S. 42, 49, 108 S.Ct. 2250, 2255, 101 L.Ed.2d 40 (1988) (quoted case omitted).

Not all acts of an on-duty state employee is state action for the purposes of section 1983.  *See Bonenberger v. Plymouth Twp.*, 132 F.3d 20, 24 (3d Cir. 1997).  "[A] police officer's purely private acts which are not furthered by any actual or purported state authority are not acts under color of state law."  *Barna v. City of Perth Amboy*, 42

F.3d 809, 816 (3d Cir. 1994). "[T]he essence of section 1983's color of law requirement is that the alleged offender, in committing the act complained of, abused a power or position granted by the state." *Bonenberger*, 132 F.3d at 24.

Based on the foregoing, when Diehl contacted the Upper Uwchlan Township Police, he did not do so under color of state law. As Diehl points out, anyone could have called the local police and made the same statements. Diehl's status as a state trooper did not make the call possible. It follows that the section 1983 claim against him fails for lack of action under color of state law.

We recognize, along with Diehl, that Plaintiff avers Diehl made other statements, not just the one to the local police. Plaintiff avers that Diehl "intentionally created an inaccurate and pernicious group of communications and accusations that were intended to create a matrix of domestic relations impediments to communication and any possible resolution of the differences between the Thomas[es]." (Compl. ¶ 18).

This averment does not assist Plaintiff because, as Diehl points out, it is conclusory and fails to provide sufficient facts about the other communications and accusations that would allow us to evaluate their significance for the claim against Diehl.

2. *Plaintiff Has Failed to State a Claim Against Winterbottom*

Plaintiff sues defendant Winterbottom for a violation of his right of access to the courts, his First Amendment right to petition the government for redress of grievances, and his procedural and substantive due process rights. He bases these claims on the following allegations concerning Winterbottom's conduct. First, she

informed Plaintiff "that if he kept asking questions, it could be construed as interference with an investigation, and she instructed him that he was not allowed to ask questions in putting information together for purposes of seeing his kids and for use in defending himself in his state-court domestic-relations conflicts. Second, she delayed and extended the IAD investigation into the plaintiff, allowing Diana Thomas to use Diehl's and other troopers' false reports in the Chester County proceedings and waiting to use any potential state court rulings damaging to Plaintiff in the IAD proceedings. Third, she sent state troopers to attend his domestic-relations hearings to gather information on him.

Winterbottom argues that Plaintiff has no access-to-the-courts claim because he was not denied the right to bring a claim, only that Winterbottom's conduct interfered with his defense of the PFA and domestic-relations proceedings. Winterbottom also argues more broadly that Plaintiff simply suffered no injury from Winterbottom's actions because the PFA proceedings ended in his favor and he fails to allege any conduct on her part that affected any other domestic-relations issue he was facing in state court.

In opposition, Plaintiff insists that he did suffer a denial of access to the courts. We disagree. Such a claim requires a plaintiff to show that the defendant "depriv[ed] him of an opportunity to pursue a non-frivolous claim." *Jones v. Domalakes*, 312 F. App'x 438, 440 (3d Cir. 2008) (nonprecedential) (citing *Christopher v. Harbury*, 536 U.S. 403, 415-418, 122 S.Ct. 2179, 2186-88, 153 L.Ed.2d 413 (2002). As noted,

Plaintiff has identified no claim Winterbottom prevented him from pursuing. He does allege that his defense of the PFA proceedings was hampered when Winterbottom allegedly delayed and drew out the IAD investigation, but hampering the ability to defend against a civil claim is not denying access to the courts, as the latter claim is defined.

We turn now to whether these allegations support any of the other constitutional claims against Winterbottom. We agree with Winterbottom that there is no procedural due process claim for the simple reason that the PFA proceedings ended in Plaintiff's favor so that he can show no due-process injury from the alleged conduct, even if Winterbottom's conduct could be connected to those proceedings in some way. *See Leer Elec., Inc. v. Schmerin*, No. 08-CV-1785, 2011 WL 6026139, at *6 (M.D. Pa. Dec. 2, 2011) (listing the elements of a procedural due process claim, including the requirement of injury).

We also cannot see a substantive due process claim against her. Any interference with his familial relationship with his children would have arisen from the PFA proceedings and the timing and number of those proceedings were controlled by Diana Thomas, his wife. Additionally, we can see no improper conduct in Winterbottom's sending state police officers to attend those PFA proceedings to see if they revealed any improper conduct on Plaintiff's part.

Finally, we note that Plaintiff asserts that Winterbottom's conduct in prohibiting him from gathering information or asking questions violated his First Amendment right to petition the government for redress of grievances. However, asking

questions and gathering information is not petitioning activity. *See generally Borough of Duryea v. Guarnieri*, ___ U.S. ___, ___, 131 S.Ct. 2488, 2495, 180 L.Ed.2d 408 (2011).

We will therefore dismiss the claims against Winterbottom.

### B.  *Dougherty's and Diana Thomas's Motions to Dismiss*

In Count III, Plaintiff sues Diana Thomas and Dougherty, her lawyer in the state-court proceedings, under the Fourteenth Amendment for abuse of process and unlawful use of civil proceedings and under the First Amendment for a violation of Plaintiff's right of access to the courts and to petition the government for redress of grievances.  These claims are based on their alleged knowing use of Diehl's allegedly false statements "in various court proceedings," (including the PFA proceedings) against Plaintiff, including his statement to the Upper Uwchlan Township Police Department that Plaintiff was a loose cannon and a prime candidate for murder/suicide.  (*Id.* ¶ 43).  Diana Thompson is also sued for violations of state and federal wiretapping laws.

#### 1.  *Defendant Dougherty's Motion to Dismiss*

Defendant Dougherty moves to dismiss the federal claims against him on the following grounds.  First, the federal civil-rights claims being asserted against him require action under color of state law, and a lawyer does not act under color of state law when representing a client, citing *Henderson v. Fisher*, 631 F.2d 1115, 1119 (3d Cir. 1980).  Second, while a private individual does act under color of state law when acting in concert with state actors, *Harvey v. Plains Twp. Police Dep't*, 421 F.3d 185, 195 (3d

Cir. 2005), Plaintiff does not allege that Dougherty conspired with any state actors. Third, while Dougherty is alleged to have acted "in concert" with Diana Thomas in pursuing the "false charges," (Compl. ¶ 43), Diana Thomas is not a state actor, and in any event, under *Heffernan v. Hunter*, 189 F.3d 405, 413 (3d Cir. 1999), a lawyer does not conspire with his client when the lawyer's actions are within the scope of his representation.

In opposition, Plaintiff argues that Dougherty has acted under color of state law because he and Diana Thomas are alleged in paragraphs 9 through 12 of the complaint to have acted in concert with Diehl and Winterbottom. We disagree. Plaintiff nowhere in his complaint alleges that Dougherty conspired with the state actors. The federal claims against Dougherty thus fail because he correctly asserts that as a lawyer representing his client he has not acted under color of state law, nor has he conspired with a client who might have conspired with state actors. Moreover, we have already decided that Plaintiff has failed to allege any civil-rights claims against Diehl or Winterbottom so even if Plaintiff had alleged that Dougherty had conspired with them, Plaintiff has still failed to state a claim against him. *See White v. Brown*, 408 F. App'x 595, 599 (3d Cir. 2010) (nonprecedential) (no valid conspiracy claims when the plaintiff cannot establish an underlying violation of his constitutional rights).

Plaintiff has not explicitly made state-law claims for abuse of process and wrongful use of civil proceedings, but both parties act as if the complaint raises these two state-law claims, so we will address Dougherty's objections to those claims.

Under Pennsylvania law, "[t]o establish a claim for abuse of process it must be shown that the defendant (1) used a legal process against the plaintiff, (2) primarily to accomplish a purpose for which the process was not designed; and (3) harm has been caused to the plaintiff." *Cruz v. Princeton Ins. Co.*, 972 A.2d 14, 15 n.1 (Pa. Super. 2009) (en banc). The process has to have been used "as a tactical weapon to coerce a desired result that is not the legitimate object of the process." *Id.* "'[T]here is no liability where the defendant has done nothing more than carry out the process to its authorized conclusion, even though with bad intentions.'" *Lerner v. Lerner*, 954 A.2d 1229, 1238 (Pa. Super. 2008) (quoted case omitted).

Dougherty argues the abuse-of-process claim fails because Plaintiff alleges that Dougherty carried out the PFA and other domestic-relations proceedings to their authorized conclusions, which is not enough, even if Dougherty had bad intentions. Plaintiff counters that the proceedings were abusive because Diana Thomas and Dougherty repeatedly used Diehl's false statements in the state-court proceedings and coerced a desired result that is not the legitimate object of the process, the deprivation of Plaintiff's relationship with his son. (Doc. 16, Opp'n Br. at pp. 6-7).

We reject Plaintiff's position. The complaint alleges that Dougherty simply pursued the process to its conclusion. That defeats the claim, regardless of motive. Plaintiff's additional argument concerning the repeated use of the false statements is irrelevant to the claim.

-13-

In relevant part, a person may be liable under Pennsylvania's Dragonetti Act for "wrongful use of civil proceedings" when he: (1) "takes part in the procurement, initiation or continuation of civil proceedings against another;" (2) "acts in a grossly negligent manner or without probable cause and primarily for a purpose other than that of securing the proper . . . adjudication of the claim in which the proceedings are based; and (3) [t]he proceedings have terminated in favor of the person against whom they are brought." 42 Pa. Con. Stat. Ann. § 8351(a) (West 2007).

Dougherty argues Plaintiff's claim lacks merit as against him for failing to allege essential elements of the claim: (1) that he acted "in a grossly negligent manner or without probable cause;" (2) that he acted "primarily for a purpose other than that of securing the proper . . . adjudication of [Diana Thomas's] claim;" and (3) that the civil proceedings ended in his favor as "the underlying custody and related matters are still pending in" state court. (Doc. 11, Supp'n Br. at p. 12). In his reply brief, Defendant argues for the first time that Plaintiff fails to allege that Defendant represented Diana Thomas in any of the PFA proceedings that ended in his favor.

In opposition, Plaintiff argues that Dougherty's position lacks merit because Dougherty is improperly applying the Dragonetti Act "strictly," "principally" the favorable termination requirement. Plaintiff maintains his real claim is about:

> the continuing use in later proceedings of process that has previously been rendered without merit in a prior PFA proceeding that terminated in his favor. The harms are not intrinsic to the ongoing proceedings, as, indeed, the domestic proceedings must go forward, but it is not the termination of those proceedings that is to be viewed as favorable or

> unfavorable, but the repeated prejudicial use of process and
> evidence to hurt and harm plaintiff[']s other rights that
> constitutes the tortuous conduct at issue. Plaintiff has state[d]
> a claim for wrongful use of civil proceedings sufficient to
> proceed with discovery.

(Doc. 16, Opp'n Br. at p. 7).

Based on Plaintiff's opposition, we must dismiss the state-law claim for wrongful use of civil proceedings. The scope of this claim is clear; it allows a defendant in civil proceedings to recover damages when the proceedings were brought without probable cause and were terminated in the defendant's favor. Whatever the merits of Plaintiff's position, the wrongful-use claim does not cover damages resulting from the continuing use in later proceedings of "process" (whatever that means) that has been found to be false in prior proceedings.

We will therefore dismiss all claims against defendant Dougherty.

### 2. *Defendant Diana Thomas's Motion to Dismiss*

Proceeding pro se, Diana Thomas moves to dismiss the claims against her on the following grounds. First, the federal civil-rights claims fail because she is a private individual who has not acted under color of state law. Nor can the color-of-state-law requirement be satisfied by Plaintiff's allegations of conspiracy with state actors as those allegations have not been pled specifically enough. As to the claim that Defendant violated federal and state wiretapping law, Defendant also contends that the allegations are not sufficiently pled.

We agree with Defendant that the complaint fails to state claims against her. First, we have already decided that no federal claims have been asserted against any of the other defendants, Diehl, Winterbottom and Dougherty. Our analysis holds true for the federal claims against Diana Thomas as well. Second, Plaintiff fails to sufficiently allege the conspiracy allegations against Defendant. Plaintiff merely alleges that Diehl agreed to notify the Upper Uwchlan Township Police Department that Plaintiff was a loose cannon and a prime candidate for murder/suicide. There are no other allegations concerning concerted action.

The state-law claims for abuse of process and wrongful use of civil proceedings also fail as against Diana Thomas for the reasons given above in dismissing those claims against Dougherty. That leave only the federal and state wiretapping claim. We agree with Defendant that this claim is not sufficiently alleged. The only allegation is completely conclusory, that: "Diana Thomas had her children electronically eavesdrop and record conversations with their father Trooper Thomas in violation of both state and federal wiretapping laws." (Compl. ¶ 30). This claim will also be dismissed.

V.   *Possibility of Amendment*

We must grant leave to amend a civil-rights claim even if a plaintiff does not request it and even if he is represented by counsel. *Fletcher–Harlee Corp. v. Pote Concrete Contractors, Inc.,* 482 F.3d 247, 251 (3d Cir. 2007). We do not have to do so, however, if amendment would be futile. *Id.* We conclude that amendment would be

futile as to all claims except for the federal and state wiretapping claim against Diana Thomas.

In regard to Diehl, the claim against him cannot be amended as based on his remarks to the Uwchlan Township police. We recognize that this claim is based on other statements by Diehl as well, but those statements are conclusory, and we can perceive no way that the claim against Diehl can proceed on those conclusory statements. However, Plaintiff may file a motion to amend the claim against Diehl if he believes that those statements, if made more specific could state a valid claim.

We will not permit amendment of the state-law claims against Diana Thomas and Dougherty for abuse of process or wrongful use of civil proceedings as our analysis above shows these claims cannot be cured by amendment. Plaintiff may file an amended claim against Diana Thomas on the federal and state wiretapping claim if he alleges sufficient facts showing the number of violations, when they occurred, the circumstances of the violation and the substance of the conversations intercepted. Plaintiff shall also allege the specific statutory sections of the federal and state laws upon which he bases the claim.

Finally, we do not believe that any claim against Winterbottom is amendable, so she will be dismissed from the action. We will issue an appropriate order.

        /s/ William W. Caldwell
       William W. Caldwell
       United States District Judge

Date: June 15, 2012

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| TIMOTHY M. THOMAS,<br>　　　Plaintiff | :<br>:<br>: |
| v. | : CIVIL NO. 1:11-CV-2336<br>: |
| DIANA MARIE THOMAS, DAVID M.<br>DOUGHERTY, DANIEL DIEHL, and<br>KATHY JO WINTERBOTTOM,<br>　　　Defendants | :<br>:<br>:<br>: |

*O R D E R*

AND NOW, this 15th day of June, 2012, upon consideration of defendants' motions (Doc. 10, 12 and 18) to dismiss the complaint, it is ordered that:

　　1.  The motions are granted, and the complaint is hereby dismissed.

　　2.  Within twenty-one (21) days of the date of this order Plaintiff may file an amended complaint setting forth his federal and state wiretapping claim against Diana Thomas conforming to the requirements mentioned in section V of the accompanying memorandum and/or also file a motion to amend his claim against Daniel Diehl.

　　3.  If Plaintiff fails to comply with paragraph 2 of this order, this action will be closed.

　　　　　　　　　　　　　　　　　　/s/ William W. Caldwell
　　　　　　　　　　　　　　　　　　William W. Caldwell
　　　　　　　　　　　　　　　　　　United States District Judge